**Edward A. STOLTZFUS, Plaintiff,**

v.

**Roy E. ULRICH, Sr., Ross Ulrich, Lester Hershey, Individually, and Roy E. Ulrich, Supply, Inc., Defendants.**

**Civ. A. No. 82–1822.**

United States District Court,
E.D. Pennsylvania.

May 1, 1984.

---

Harvey Miller, Lancaster, Pa., for plaintiff.

James Clymer, Lancaster, Pa., for defendants.

## OPINION

TROUTMAN, Senior District Judge.

### PROCEEDINGS

This matter, having been called for trial and the defendants having presented certain motions which were responded to and argued before the court yesterday, we find it necessary, therefore, to forthwith dispose of the motion or motions pending before proceeding to the question of trial. Hence, we accomplish that result by virtue of a bench opinion which, unfortunately, is not sometimes presented with the same degree of care as a fully-written opinion which is reflected upon for several weeks and sometimes months.

In any event, the record will show that the defendants in the instant action brought pursuant to 42 U.S.C. § 1985(3) have moved for dismissal of the complaint under Fed.R.Civ.Pro. 12(b) for failure to state a claim upon which relief can be granted or, alternatively, for summary

judgment pursuant to F.R.C.P. 56(b). Defendants have also moved to dismiss the pendent state claims for lack of subject matter jurisdiction.

■ Before considering the substantive bases of the motion or motions, we note and address plaintiff's contention that a 12(b) motion at this stage of the proceedings should not be entertained by the court because it was untimely made. Rule 12(b) allows certain defenses, among them failure to state a claim upon which relief may be granted, to be raised by motion before an answer is filed. Obviously, that procedure was not followed here. However, defendants' counsel noted in argument that the original answer was filed *pro se* before counsel was involved in the case and, therefore, contends that technical deficiencies in the timing of the motion or motions should not preclude the court's consideration thereof. However, there is an alternative basis upon which the court may consider defendants' motion at this time. Subdivision (h)(2) of Rule 12 permits the defense of failure to state a claim upon which relief may be granted to be raised by a motion for judgment on the pleadings or at the trial on the merits. Additionally, subdivision (h)(3) of Rule 12 provides that the court shall dismiss an action "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter." This case having been called to trial and questions of the sufficiency of the claim and subject matter jurisdiction having been raised, we will treat the defendants' motion as one for judgment on the pleadings, looking beyond any technical deficiencies, to its substance.

Several issues have been raised in support of the contention that a 1985(3) claim cannot be supported by the facts of this case. Before considering those in appropriate detail, we will review the elements of a 1985(3) claim.

■ To establish a cause of action under 42 U.S.C. § 1985(3), a plaintiff

must allege that the defendants did (1) "conspire to go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws." [He] must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy", whereby [he] was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971).

Although the statute reaches private action, it is not "intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin* 403 U.S. at 101, 91 S.Ct. at 1798. Therefore, to ensure that the statute is not treated as a "general federal tort law," the courts have required as an element of the cause of action that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin, supra,* at 102, 91 S.Ct. at 1798. In addition, it is important to note that 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great American Savings and Loan Association v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

Defendants have challenged the plaintiff's claim in the first instance by asserting that class-based animus was not alleged and that even if the complaint were amended, plaintiff could not show that he. is a member of any class contemplated by the Supreme Court in *Griffin.* By way of answer, the plaintiff cites cases from the Fourth and Tenth Circuit Courts of Appeals to support his proposition that classes based on religious affiliation are properly covered by 1985(3), and further asserts that he is a member of an identifiable class of Amish Mennonites.

As to this issue, we note first that the circuit courts are widely divergent in their interpretations of the *Griffin* case. Some

construe it very broadly, while others give it a very narrow reading as indicated in a lengthy footnote in the case of *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711 (9th Cir.1981) which, at page 719, lists the positions taken by each circuit. We, of course, are bound to follow the reasoning of the Third Circuit. Neither plaintiff nor defendant has cited any cases indicating how our circuit perceives the issue of what constitutes a class-based animus. Although we have grave doubts as to whether the class contended by the plaintiff would be sufficient to support a 1985(3) claim in the factual context presented here, we decline to further inquire into the matter for reasons which will quickly become apparent.

Defendants also contend that plaintiff's claim is more properly the subject of a Title VII action in that it is premised upon an unlawful discharge from employment on the basis of religion. The complaint alleges that the plaintiff was employed as an engineering machinist by the defendant Roy E. Ulrich Supply, Inc. (hereinafter "Ulrich Supply") beginning July, 1979. It further alleges that all employees of Ulrich Supply, including the individual defendants, are members of the Mennonite religious sect. Plaintiff, although born into the Mennonite religious sect, has not for many years, been affiliated with that sect and its members. As a consequence, plaintiff avers that he was subjected to proselytizing from a fellow employee throughout the course of his employment at Ulrich Supply. The persistent nature of this proselytizing forced plaintiff to initiate legal action for harassment against his fellow employee. Plaintiff alleges that he was thereafter threatened with termination of employment by defendant Roy Ulrich if he did not drop his lawsuit and, further, adhere to the Mennonite religious beliefs. His refusal to so act led the individual defendants, Roy Ulrich, Ross Ulrich and Lester Hershey, to conspire and deprive plaintiff of his right to practice his religious beliefs. It is alleged that this conspiracy manifested itself in plaintiff's termination from employment on August 14, 1981.

Defendants cite *Great American Savings and Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) in support of their position that a 1985(3) action is impermissible when the subject matter of the claim falls within the purview of Title VII.

In *Novotny*, plaintiff alleged he was discharged from his employment because he had spoken out against a policy of his employer and its directors to deny women equal employment opportunity. Said policy was in essence a conspiracy motivated by an invidious animus against women. The Supreme Court found that Novotny's claim really arose from a conspiracy to violate Section 704(a) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–3(a). The question the Court faced, therefore, was "whether the rights created by Title VII may be asserted within the remedial framework of 1985(3)." *Novotny, supra* at 377, 99 S.Ct. at 2351. (Emphasis in original) The Court concluded in no uncertain terms "that 1985(3) may not be invoked to redress violations of Title VII." *Id.* at 378, 99 S.Ct. at 2352.

In the case at bar, plaintiff's claim can properly be described as one for unlawful discharge from employment by reason of religious beliefs. Such claims are clearly controlled by 42 U.S.C. § 2000e–2(a), which is directed against unlawful employment practices by private employers. It would seem, then, that under *Novotny*, plaintiff's 1985(3) action should be dismissed. Closer scrutiny, however, reveals that the issue is not so easily resolved. Congress has chosen to exclude certain classes of employers from the coverage of Title VII. Among those excluded are employers of fewer than 15 employees. 42 U.S.C. § 2000e(b). A review of the interrogatories and corresponding answers filed in this case show that defendant Ulrich Supply employed only 12 people at the time of plaintiff's discharge.

■ Therefore, we are faced with the question whether a plaintiff has a cause of action under 1985(3) if the defendant em-

ployer is not subject to suit under Title VII. The Supreme Court specifically declined to decide this issue in *Novotny.* 442 U.S. at 370 n. 6, 99 S.Ct. at 2348 n. 6. However, analysis of both the majority and concurring opinions sheds significant light on the question. Both Justice Powell and Justice Stevens agree that 42 U.S.C. § 1985(3), a "Civil War era remedial statute [which] provid[es] no substantive rights itself," should not be construed to provide a remedy for violations of subsequently created statutory rights, such as those created by Title VII. *Id.* at 378, 379, 99 S.Ct. at 2352. Rather, "its reach is limited to conspiracies to violate those fundamental rights derived from the Constitution." *Id.*

In this regard, the Supreme Court "has never held that the right to any particular private employment is a 'right of national citizenship' or derives from any other right created by the Constitution." *Id.* at 380, 99 S.Ct. at 2353. Indeed, by enacting Title VII with the exemptions to which we have previously referred, Congress has consciously chosen to "accord[ ] less than full protection to private employees." *Id.* at 381, 99 S.Ct. at 2351. Moreover, permitting plaintiffs to invoke 1985(3) to assert rights created by Title VII enables them to bypass the administrative procedures which the statute requires *all* to follow before a suit can be filed in federal court. In addition, it would enable plaintiffs to demand a jury trial and seek both compensatory and punitive damages, none of which are available under Title VII. The Supreme Court believed that such a result would undermine the integrity of Title VII. *Novotny, supra,* at 375, 376, 99 S.Ct. at 2350, 2351. This argument is particularly compelling in light of the fact that, after *Novotny,* the only plaintiffs who arguably would be able to assert Title VII-type rights through 1985(3) are those whom Congress chose to exempt from the protections of the Civil Rights statute, *e.g.,* as here, employees of businesses with fewer than 15 employees. This result would be anomalous. The function of the federal courts is not to create alternative federal remedies for parties who were consciously

exempted from certain types of remedies by Congress. It is clear that plaintiff should have pursued his claim through the state courts.

■ In addition, an alternate basis compels a decision for the defendants in the matter at bar. Plaintiff's 1985(3) claim is premised upon alleged violations of his First and Fourteenth Amendment rights. In his trial brief, he contends that because his claim is premised on 1985 rather than 1981, "There is no requirement that there be state action." (Plaintiff's trial brief at p. 4) citing *Taylor v. Gilmartin,* a Tenth Circuit case decided in 1982, 686 F.2d 1346. However, the Supreme Court of the United States addressed the issue of whether a 1985(3) claim is a proper vehicle to redress violations of the First and Fourteenth Amendments in August of 1983. Both the Fourteenth Amendment and the First Amendment, by virtue of the Due Process Clause of the Fourteenth Amendment, protect individuals from a denial of their rights by state or otherwise official actors. *Carpenters v. Scott,* — U.S. —, — – —, 103 S.Ct. 3352, 3356–57, 77 L.Ed.2d 1049, 1055–56 (1983). Consequently, the Supreme Court has held that, in the context of a 1985(3) claim alleging a conspiracy to deprive a person of his First and Fourteenth Amendment rights, "it would be untenable to contend that either of those provisions could be violated by a conspiracy that did not somehow involve or affect a state." *Carpenters, supra* at —, 103 S.Ct. at 3357, 77 L.Ed.2d at 1056. Since 1985(3) provides no substantive rights itself, "[t]he rights, privileges and immunities that 1985(3) vindicates must be found elsewhere." *Id.* —, 103 S.Ct. at 3358, 77 L.Ed.2d at 1057; *Novotny, supra* 442 U.S. at 372, 99 S.Ct. at 2349. Where, as here, the rights allegedly infringed find their source in the First and Fourteenth Amendments, a plaintiff must "prove that the state was somehow involved in or affected by the conspiracy." *Carpenters, supra* — U.S. at —, 103 S.Ct. at 3358, 77 L.Ed.2d at 1057; *United States v. Price,* 383 U.S. 787, 799, 86 S.Ct. 1152, 1159, 16

L.Ed.2d 267 (1966); *Elliott v. Bloor,* 425 F.Supp. 1140, 1143–44 (E.D.Pa.1976).

Accepting as true plaintiff's factual allegations in the instant matter, he has not alleged nor can he allege that the conspiracy to violate his First and Fourteenth Amendment rights involved state action. All parties to the case at bar are private actors. Hence, we are obliged to grant judgment on the pleadings as to the plaintiff's 1985(3) cause of action for failure to set forth a claim upon which relief can be granted. F.R.C.P. 12(c) and (h)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Therefore, we need not consider the additional arguments put forth by the defendants.

Moreover, since the 1985(3) claim was the sole source of this court's jurisdiction, we will likewise dismiss the pendent state claim. However, we dismiss the state claim without prejudice pursuant to 42 Pa. C.S.A. § 5103(b) to insure that these claims may be reasserted in the appropriate state court.

Accordingly, an appropriate order will be entered ordering that, as to count one of the complaint, judgment on the pleadings is granted in favor of the defendants and against the plaintiff, and it will further order that count two of the complaint is dismissed without prejudice pursuant to 42 Pa.C.S.A. § 5103 so that this claim may be reasserted in an appropriate state court. Given that ruling of the court, no further trial is required; and unless there are questions, this court is adjourned.