**Teresa HOOTEN, O.D. and John Kozempel, her spouse**

v.

**PENNSYLVANIA COLLEGE OF OPTOMETRY.**

Civ. A. No. 84–4129.

United States District Court, E.D. Pennsylvania.

Nov. 30, 1984.

Francis X. Nolan, Philadelphia, Pa., for plaintiffs.

Howard R. Flaxman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

James McGirr KELLY, District Judge.

Teresa Hooten has brought an action against Pennsylvania College of Optometry (PCO) for (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*; (2) intentional infliction of emotional

distress; (3) wrongful discharge from her employment. Her husband has filed a pendent claim for loss of consortium. PCO has moved for the court to strike the request for compensatory and punitive damages and to dismiss all tort claims for failure to state a cause of action upon which relief can be granted.

■ When presented with a motion to dismiss, the court must view the pleadings in the light most favorable to the non-moving party. *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) and the complaint should never be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support a claim which would afford her relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## I. FACTS

Plaintiff Teresa Hooten, a former employee of PCO has alleged that she was discriminated against on the basis of her sex in contravention of Title VII of the Civil Rights Act of 1964. The complaint states that PCO management made a continuum of disparaging remarks about both her marital status and her role as a mother. The harassment also took the form of purposely overloading her work schedule forcing her to commit errors which caused professional embarrassment. As a result of this activity, plaintiff collapsed at work and was ignored by her supervisors who refused to come to her aid. Plaintiff was eventually terminated from her employment with PCO and has characterised that action as the result of the cumulative effects of defendants' discrimination toward her. Her husband claims a loss of consortium due to PCO's actions. This memorandum will address, in order, defendant's motion to strike damage claims from Count I of the complaint (TITLE VII) and defendant's motion to dismiss Counts II, III and IV for failure to state a claim.

## DISCUSSION

I. Does 42 U.S.C. § 2000e–5(g) Provide for Compensatory and Punitive Damages?

Hooten's request for relief for the violations of Title VII include reinstatement of her position with back pay along with compensatory damages for pain and suffering and punitive damages. Defendant objects to any relief being granted in the nature of compensatory or punitive damages since Title VII does not provide such remedies if discrimination is found to have happened.

■ It is well settled within this Circuit that punitive damages may not be recovered under a Title VII action. *Richerson v. Jones*, 551 F.2d 918, 926–28 (3d Cir.1977). 42 U.S.C. 2000e–5(g) directs the court as to its permissive range of responses once it finds that the defendant has engaged in unlawful conduct.

That section reads in part, "[the court may] order such affirmative actions as may be appropriate, which may include, but is not limited to, reinstatement ... with or without backpay ... or any other equitable relief as the court deems appropriate." The court in *Richerson* interpreted the phrase *"any other equitable relief"* to foreclose any punitive damage claims since punitive damages are a traditional form of relief offered in courts of law and not courts of equity. *Richerson*, 927. In arriving at this conclusion, the court examined the legislative history of the provision and found no evidence of a congressional intent to authorize punitive damage awards under Title VII. *Id.* at 927.

While our Circuit has addressed the issue of punitive damages, it has not yet decided whether the § 2000e–5(g) provide for compensatory damage award beyond back pay. The district courts within our circuit have reached contradictory results on this issue. *Compare Bradley v. Corson*, 501 F.Supp. 75 (E.D.Pa.1980) and *Presseisen v. Swarthmore College*, 71 F.R.D. 34, *aff'd mem.*, 582 F.2d 1275 (3d Cir.1978) (compensatory damages unavailable) with *Ahmad v. Independent Order of Foresters*, 81 F.R.D. 722

(E.D.Pa.1979) (compensatory damages available).

We believe that the better view is expressed in the *Bradley* and *Presseisen* decisions which draw much of their legal reasoning from *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Ca.1973). In the *Van Hoomissen* decision, after a thorough examination of the lengthy legislative history surrounding Title VII, that court held that Congress intended to provide a "wide panorama of equitable tools" that courts might use but did not intend that courts should punish defendants by imposing upon them large money awards in the form of compensatory or punitive damages. The debate on the legislation is devoid of any reference to money damages outside of the specific provisions written into the statute providing back pay.

This court believes that the issue then is not one of whether the claim for relief is characterized as compensatory or punitive in nature, but rather is the plaintiff requesting the court to fashion a legal or equitable remedy. *Richerson*, 926, n. 13.

■ Damages for pain and suffering are legal remedies not equitable ones and therefore defendant's motion to strike these damages will be granted.

II. Count II of the complaint fails to allege the extreme and outrageous behavior to state a claim for intentional infliction of emotional distress.

Defendant advances the legal proposition that even assuming, *arguendo*, the allegations of her mistreatment are true, the conduct of PCO falls short of constituting the tort of intentional infliction of emotional distress.

■ Section 46 of the Restatement (Second) of Torts characterizes this tort as the actions of "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ...." There are four elements necessary to state a cause of action under § 46: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979).

■ Extreme and outrageous conduct is that which goes beyond all bounds of decency such that the action would be characterized as atrocious and utterly intolerable in a civilized society. *D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 972–73, n. 8.

In our search for a precedent to guide us in evaluating plaintiff's claim, we have found no discrimination cases which are similar to the facts at bar. District courts within this circuit have addressed this tort within the context of sex discrimination brought about by sexual advances and physical harassment. *See Shaffer v. National Can Corp.*, 565 F.Supp. 909 (E.D. Pa.1983); *Vegh v. General Electric Co., et al.*, 34 F.E.P. Cases 135 (E.D.Pa.1983). These cases involved actions by the defendant which included direct sexual advances made to female employees, threats of retribution if they refused to comply, unconsented physical contact, and sexual references about them made to other co-workers. These type of actions were found to be outrageous enough to withstand defendants' motions to dismiss for failure to state a claim.

While in no way do we wish to mitigate any of the pain and humiliation plaintiff may have suffered, the court does not believe that the alleged conduct can be analogized to the sexual harassment cited in the cases above.

Another line of cases dealing with employment terminations but not sexual discrimination seems to be more instructive. In *Wells v. Thomas*, 569 F.Supp. 426 (E.D. Pa.1983) that court held that the plaintiff failed to state a cause of action for the intentional infliction of emotional distress based on these allegations: plaintiff was transferred from her position into a newly created undefined management slot; her private office as well as her secretary were

taken away from her; one of her phone lines was removed without first consulting with her and she was the only manager at work who, when not present at her desk, would have phone calls go unanswered. The plaintiff asserted that the purpose of these actions was to place such emotional strain and distress upon her that she would be forced to quit. Citing comment (d) to the Restatement (Second) of Torts,[1] that court held no cause of action was stated. *Id.* at 433.

It is not enough, like in the *Wells* case, to state or to show that one has suffered emotional distress because of an intentional tortious act. Rather, the plaintiff must show that the conduct complained of crossed the threshold of decency into a realm of atrocity that could only be regarded as utterly intolerable in a civilized society.

 The court, accepting the pleadings in the light most favorable to the plaintiff, finds that although she may have suffered emotionally from PCO's actions, their conduct did not rise to the level that was so outrageous that it went beyond all bounds of decency.

The complaint does not state what comments were made to Hooten about her role as wife and mother and we have no way of determining if such comments would make a *prima facie* tort for intentional infliction of emotional distress. Nor do we believe that scheduling an employee with inordinate amount of work is tantamount to conduct which is outrageous in its very essence. While creating an environment which is oppressive to function within is likely to cause distress it is not the type of action to arouse resentment, by the average member of the community, against the actor. The type of conduct plaintiff has alleged pales in comparison to the actions Pennsylvania courts have found to constitute the tort of intentional infliction of emotional distress. *Cf. Chuy* (team doctor told reporter that member of football team suffered from fatal blood disorder though knowing it to be false); *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970) (hit and run driver removed young boy's body from scene of accident and buried it in a field); *Shaffer* (claim based on a continual pattern of sexual advances and retaliation for refusing those advances).

Defendant's motion to dismiss Count II will be granted for failure to state a claim upon which relief can be granted.

III. Plaintiff Kozempel's Claim for Loss of Consortium Should be Dismissed.

 Kozempel has filed a pendent claim (Count III) for loss of consortium. Under Pennsylvania law the husband may not recover damages in the absences of his wife's right to recover. *Little v. Jarvis,* 219 Pa.Super. 156, 280 A.2d 617 (1971). Since the husband's right of action is derivative of his wife's, Count III of the complaint will be dismissed.[2]

IV. Did PCO Breach a Covenant to Deal in Good Faith by Wrongfully Discharging Plaintiff?

In Count IV, plaintiff asserts that she was wrongfully discharged in that her termination violated a covenant of good faith and fair dealing contained within her contract.[3]

---

1. Section 46 of the Restatement (Second) of Torts, comment (d) states in part:
 It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

2. Kozempel is unable to recover damages for his cause of action under Title VII since a recovery for loss of consortium is a legal remedy and not an equitable one.

3. The court is unable to determine from the pleadings if the contract was one "at will" or is "written contract for a fixed duration." Generally the use of terminology "cause of action for wrongful discharge" alludes to employment con-

Pennsylvania Courts have recognized a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Geary was dismissed from his salesman's position after having a disagreement with his supervisors over the safety of their products. *Geary* held that one who is employed at will may bring an action for wrongful discharge if he can show that a significant mandate of public policy would be violated by his dismissal.

██ Unlike the situation in *Geary* where plaintiff had only one avenue of relief available to him, plaintiff in the instant case is provided with a statutory remedy if a violation is found. The issue this Court is presented with is whether a cause of action for wrongful discharge may be maintained if the state provides other forms of relief for the wrong committed. In *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221 (1984) the Third Circuit underscored the limited authority a federal court possesses in applying the law of the state stating that it is beyond the authority of a federal court in these circumstances to create an entirely new cause of action. The court noted that when one loses their employment due to discrimination, the Pennsylvania legislature has created a cause of action and a forum for the person to be heard by way of the Pennsylvania Human Relations Act, Pa. Stat.Ann., 43 §§ 951 *et seq.* (PHRA). The court held a common law cause of action could not be maintained.

The Pennsylvania Human Relations Commission was established for the very purpose of investigating and ferreting out the very abuses Hooten complains about. PHRA is an exclusive remedy and was forfeited when plaintiff filed this action.[4] The *Wolk* court noted that no Pennsylvania court has spoken directly on the issue of whether a cause of action may be maintained in spite of the availability of other remedies under state law. They held that, in the absence of a state court holding in

the affirmative, the federal courts would not expand the law to provide for a common law cause of action in addition to the state proceedings available to plaintiff. *Wolk*, 234.

Since PHRA provides that a filing of action estops the party from asserting its claim before the commission, our holding dismissing this count may seem unduly harsh. Nevertheless, it is consistent with the court's ruling in *Wolk* and Count IV of plaintiff's complaint will also be dismissed for failure to state a claim upon which relief can be granted. An appropriate order follows.

### ORDER

AND NOW, this 30th day of November, 1984, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Plaintiff Teresa Hooten's damage claims shall be limited to back pay, reinstatement of her position and any other form of equitable relief allowed under 42 U.S.C. § 2000e–5(g).

2. Defendant's motion to dismiss Counts II, III, and IV of plaintiffs' complaint is GRANTED.

---

tracts that are at will. *Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974).

**4.** 43 § 962(b).