## Moffatt v. Baird Funeral Home Inc.

C.P. of Mercer County, no. 2004-1136.

*Melissa B. Catello,* for plaintiffs.
*James A. DeFrank,* for defendants.

ST. JOHN, *J.,* November 10, 2004—This unique case concerning mistreatment of a corpse is before the court on defendants' preliminary objections to the amended complaint in the nature of a demurrer and motion to strike, which will be sustained in part and denied in part. The additional defendants are not involved in these preliminary objections.

The plaintiffs in this action are the five children of Eleanor M. Billig, deceased, the estate and the personal representative of the estate.[1] Eleanor Billig died of natu-

---

1. At the outset, the court notes that neither the estate nor the personal representative of the estate are real parties in interest pursuant to Pa.R.C.P. 2002(a), and neither has standing to pursue this personal injury action on behalf of the estate in its own right or on behalf of the heirs. The causes of action being advanced by this suit are "tortious interference with a dead body" and "intentional infliction of emotional distress." The amended complaint seeks no recovery for any injuries sustained by the decedent during her lifetime, nor for any loss incurred by the estate, such as additional funeral expenses, nor does it assert a wrongful death and/or survival action.

The "interference with a dead body" tort has been used infrequently in Pennsylvania, but seems to have as its foundation for recovery the emotional distress to the loved ones for withholding a decedent's body or through atrocities inflicted on the corpse. While it is generally true that a cause of action for personal injury will survive a person's death and may be litigated by that decedent's estate, 42 Pa.C.S. §8302, such personal injuries must have been inflicted on the decedent herself, during her lifetime. Notably, the instant complaint does not seek damages for any inter vivos personal injuries suffered by Eleanor Billig

ral causes on April 22, 2002, at her residence in Mercer County, and her body was eventually transported by ambulance to the Baird Funeral Home at the request of plaintiffs. Interment and service arrangements were made

---

herself, nor for any injuries which may have caused her death. All of the allegedly tortious actions were inflicted on her corpse after her death. Her children are the alleged victims. Furthermore, section 868 of the Restatement of Torts, which sets forth the elements of the "interference with a dead body" cause of action (as it has been adopted in Pennsylvania), provides that one who commits the tort "is liable to the *member of the family* of such person who is entitled to the disposition of the body." Restatement of Torts §868 (1939). (emphasis added) An estate is obviously not "a member of the family" of the deceased. An estate is a legal entity and cannot *itself* suffer from or recover for emotional distress for harm inflicted upon the decedent's corpse. An estate, *in its own right,* can only suffer economic damages, if any, in this type of case.

Likewise, the tort of "intentional infliction of emotional distress," though liability is not reserved solely for members of the family, is aimed at compensating for inter vivos emotional injury. Were the allegations against these defendants that they caused emotional distress to the decedent herself prior to her death, then the estate would have a claim which survived her death. However, no such allegations were made.

Despite the fact that the estate and its personal representative are not real parties in interest, the court cannot always dismiss a claim for lack of standing sua sponte. The court may raise the issue of standing of its own accord only when standing is interwoven with subject matter jurisdiction. See *In re Adoption of W.C.K.,* 748 A.2d 223 (Pa. Super. 2000); *Grom v. Burgoon,* 448 Pa. Super. 616, 672 A.2d 823 (1996). Standing only becomes interwoven with subject matter jurisdiction when a statute creates the cause of action and designates who may sue. *Id.* Because neither cause of action at issue here was created by a statute that designates who may sue, the question of standing has not been interwoven with subject matter jurisdiction, and the court has no authority to dismiss the estate or its personal representative at this juncture. While the defendants have waived the defense of lack of capacity to sue by failing to raise it in its responsive pleading (see Pa.R.C.P. 1032(a)), they may be able to remove these parties on a motion for judgment on the pleadings or summary judgment.

with this defendant funeral home and/or its representatives or affiliates.

Plaintiffs allege that their late mother's body was to be prepared for viewing, services, and interment by the Baird Funeral Home. Plaintiffs further allege that they suffered mentally and emotionally when they viewed their mother's body at the funeral home and observed "severe burns, bruises, and/or discoloration on and around the decedent's eyes, nose, cheeks, mouth, neck and/or other areas of the decedent's body, as well as puncture wounds to the throat and/or chest of the decedent."[2] Amended complaint at ¶¶13-14. The plaintiffs allege that the defendants "wantonly mistreated the body of the decedent," *id.,* and failed to "properly embalm the decedent." *Id.* at ¶19a.

The plaintiffs then demanded possession and/or transport of their mother's remains to the additional defendants' funeral home for the completion of funeral services. Plaintiffs claim that the defendants thereafter refused this request (for an unspecified amount of time), and thereby "intentionally withheld the body of the decedent without privilege." Amended complaint at ¶12.

Based on the above averred facts, the plaintiffs' amended complaint sets forth two causes of action divided into seven counts. In Count I, plaintiffs collectively accuse defendants of "interference with a dead body"; a scarcely used intentional tort from the original Restatement of Torts (1939), which was adopted by the Pennsylvania Supreme Court in *Papieves v. Kelly) (Lawrence),* 437

---

2. Plaintiffs do not allege that the observations occurred or accompanied any scheduled viewing or service.

Pa. 373, 263 A.2d 118 (1970). In Counts II through VI, the plaintiffs individually allege that defendants, through the same actions, have committed the more commonly utilized tort of "intentional infliction of emotional distress." Count VII is a claim for punitive damages. Plaintiffs claim that the defendants' intentional mishandling of their mother's body and the plaintiffs' subsequent discovery of the same, coupled with the defendants' refusal to turn over her body upon demand has caused them a myriad of health problems, wage losses, suicidal tendencies, and alcoholism, etc. Plaintiffs therefore seek both compensatory and punitive damages because of the allegedly "outrageous" and intentional conduct involved.

The defendants' preliminary objections to the amended complaint are three-fold. First, defendants challenge the legal sufficiency of plaintiffs' tort claims by demurrer, claiming that at best they have set forth a cause of action for negligently embalming the decedent, which plaintiffs concede is not a viable cause of action in Pennsylvania. Second, defendants challenge the propriety of plaintiffs' plea for punitive damages and ask that it be stricken from the complaint. Third, defendants seek to have paragraph 19(i) stricken as an improper general allegation which cannot be defended properly.

## 1. DEMURRER

For purposes of reviewing preliminary objections based upon a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa. Super. 2000). When presented with preliminary objections whose end

result would be the dismissal of a cause of action, a court should sustain the objections only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). (citations omitted) Furthermore:

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . .

"Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999).

### (A)—*Interference With a Dead Body*

The intentional tort of "interference with a dead body," as adopted in Pennsylvania, is defined by the First Restatement of Torts as follows:

"A person who wantonly mistreats the body of a dead person or who without privilege intentionally removes, withholds or operates upon the dead body is liable to the member of the family of such person who is entitled to the disposition of the body." Restatement of Torts §868 (1939).[3]

---

3. In more recent revisions of the Restatement, the language has changed and expanded in some significant ways. Most notably, it now allows an action for mere *negligent* mistreatment or withholding:

"One who intentionally, recklessly or *negligently* removes, withholds, mutilates or operates upon the body of a dead person or pre-

Plaintiffs have averred the elements of this intentional tort, word for word, and in two respects. Plaintiffs allege that the defendants "wantonly mistreated the body of the decedent [by] causing severe burns, bruises, . . . punc-

---

vents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." Restatement (Second) of Torts §868 (1979). (emphasis added)

The Pennsylvania Supreme Court has neither adopted, nor even considered, the Second Restatement version. The Superior Court, however, has expressly refused to adopt the new language and refused to allow an action to proceed under this section for solely negligent conduct. See *Hackett v. United Airlines,* 364 Pa. Super. 612, 528 A.2d 971 (1987). There, the Superior Court found "no indication whatsoever in the opinion that the [*Papieves*] court intended to blanketly sanction any extension of the provided cause of action in accordance with future revisions of, or additions to, section 868 in later Restatements." *Id.* at 616, 528 A.2d at 974. The Superior Court suggested that any change on the parameters of this tort must come from the Supreme Court. *Id.* at 616-17, 528 A.2d at 974. See also, *Kearney v. City of Philadelphia,* 150 Pa. Commw. 517, 616 A.2d 72 (1992). Therefore, the controlling elements of tortious "interference with a dead body" remain those set forth in the 1939 version of the Restatement.

This limiting of the "interference with a dead body" tort to wanton and intentional conduct, makes some sense in light of Pennsylvania's "impact rule" which is still, to some extent, applied to the tort of *"negligent* infliction of emotional distress." The "interference with a dead body" tort is essentially just a more specific type of an *"intentional* infliction of emotional distress" claim. Historically, this latter tort permitted recovery for injuries which were solely *emotional* in character, but only because the conduct necessary to impose liability was *intentional,* and therefore more culpable. Similarly, the "interference with a dead body" tort which also allows recovery for purely *emotional injury,* must likewise require a more culpable type of conduct.

By comparison, where conduct is merely *negligent,* our courts have been reluctant to award damages for emotional injuries which are not accompanied by some *physical* manifestation of those injuries, or where more specific circumstances justify them. The *Papieves* court addressed the "impact rule" as it applies to section 868 as follows:

ture wounds," etc. Amended complaint at ¶13. Plaintiffs also allege that the defendants "intentionally withheld the body of the decedent without privilege." Amended complaint at ¶12. Accordingly, this court cannot state

---

"[T]he impact rule, to the extent that it remains a viable rule of law in Pennsylvania, is inapplicable in the case now before us. As it was applied in this Commonwealth, the rule limited the scope of duty imposed on an actor who *by his negligence* had imperiled the plaintiff; the rule precluded the recovery of damages for the negligently inflicted consequences of fright, shock or emotional disturbance absent some contemporary physical impact with, or some physical injury to, the plaintiff.

"At issue in the present case is the right to recover for emotional distress which—so it is alleged—has directly resulted from defendants' *intentional or wanton misconduct.* Invocation of the impact rule is no more meaningful in this instance than it would have been in the areas of libel or invasion of privacy where recovery is permitted for mental or emotional distress without regard to the presence of 'impact.'" *Papieves,* 437 Pa. at 380, 263 A.2d at 121-22. (citations omitted) (emphasis supplied)

The "impact rule" is somewhat antiquated and may even be characterized as a misnomer at this point. See *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970). The specific circumstances which will justify an award for purely emotional damages today are set forth in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), and they do not turn on any so-called "impact." In *Sinn,* our Supreme Court held that in order to recover for *negligent* infliction of emotional distress, a plaintiff must fall into one of three categories: (1) the plaintiff was located near the scene of the accident (*i.e.,* within the "zone of danger"), (2) the shock to the plaintiff resulted from the sensory and contemporaneous observance of the accident in question, or (3) the plaintiff was closely related to the victim. *Id.* *Sinn* remains the test applicable to "*negligent* infliction of emotional distress."

It would seem to this court, that the categories of *Sinn,* particularly category (3), would encompass most if not all "negligent interference with a dead body" factual scenarios. Therefore, despite the assurances of the *Hackett* court that Pennsylvania does not recognize a cause of action where interference with a dead body was merely negligent, this

with certainty that these well-pled facts, if proven, would not entitle plaintiffs to relief under section 868 of the Restatement for either withholding their mother's body and/or for mistreating her remains. See generally, Robert A. Brazener, Annotation, *Liability in Damages for Withholding Corpse from Relatives,* 48 A.L.R.3d 240 (1973).

### (B)—*Intentional Infliction of Emotional Distress*

"To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe." *Hoy v. Angelone,* 456 Pa. Super. 596, 610, 691 A.2d 476, 482 (1997), citing *Hooten v. Penna. College of Optometry,* 601 F. Supp. 1151, 1155 (E.D. Pa. 1984); Restatement (Second) of Torts §46 (1979).

The plaintiffs have averred the elements and facts of this intentional tort as well: "The defendants intentionally and/or recklessly caused severe emotional distress

---

court believes that such a cause of action under the rules of *Sinn v. Burd* should be permitted, at least where "the plaintiff was closely related to the victim." The only real difference between a suit for "negligent infliction of emotional distress" where the factual allegations involve interference with the dead body of a close family member, and a suit for "negligent interference with a dead body" is a semantic one. Viewed in this light, it is curious that the Superior Court did not recognize the broadened language of section 868 of the Restatement (Second) of Torts. The *Hackett* court's limiting of the "interference with a dead body" tort to wanton and intentional conduct is inconsistent with the parameters set forth in *Sinn,* which could incorporate negligent conduct into the "interference with a dead body" tort, at least where the plaintiff falls within *Sinn*'s third category.

to the [plaintiffs] by extreme and outrageous conduct as set forth above." See amended complaint at ¶¶22, 26, 30, 34 and 38.

The well-pled averments noted earlier in this opinion make it evident to the court that demurrer is unwarranted. While plaintiffs have not offered any objective proof of these allegations, that is not the test to survive a demurrer.[4] Some of the plaintiffs' allegations may sound in negligence, which would not be actionable in Pennsylvania. However, the averments viewed in a light most favorable to plaintiffs can be interpreted as a specific reference to the alleged wanton and intentional conduct of defendants.[5]

Obviously, the court is bound by the procedural posture of this action and the standard of review for a demurrer, and cannot dismiss this action even if it appears dubious and perhaps over-inflated. As the *Papieves* court itself stated, "[t]he only facts before the court are the averments of the complaint, and for present purposes the demurrer admits every well-pleaded material fact set forth in the pleading to which it is addressed and the inferences reasonably deducible therefrom." *Papieves* at 374, 263 A.2d at 119. Thus, the plaintiffs must be given the opportunity to come forward with evidence of intentional

4. Essentially, the defendants are attempting to use a demurrer to dispute the alleged facts. Obviously, that is beyond the scope of a demurrer to a complaint.

5. For the most part, the amended complaint sticks to the rigid language it must in order to sound in the intentional torts asserted. For example, nowhere does it mention a standard of care of morticians that was breached. The intentional/wanton character of the alleged actions of the defendants is maintained throughout the amended complaint.

mishandling and disfigurement, and/or unprivileged withholding, as averred, entitling them to compensation. Defendants' preliminary objection in the nature of a demurrer will therefore be denied.

## 2. MOTION TO STRIKE

Defendants' second preliminary objection challenges the legal sufficiency of plaintiffs' demand for punitive damages in Count VII of the amended complaint. The court will view this preliminary objection as a motion to strike the plaintiffs' plea for punitive damages as impertinent and scandalous matter, as the former is inappropriate.[6] In any event, the defendants' second preliminary objection will also be denied.

Pennsylvania Rule of Civil Procedure 1028(a)(2) (formerly Rule 1017(b)(2)) permits a motion to strike for the purpose of preliminarily objecting to the pleading on

---

6. "[A] preliminary objection in the nature of a motion to strike off impertinent matter would appear to be the appropriate means through which to challenge an erroneous prayer for damages." *Hudock v. Donegal Mutual Insurance Co.,* 438 Pa. 272, 277-78 n.2, 264 A.2d 668, 671 n.2 (1970).

Punitive damages are merely a measure of damages arising out of an initial cause of action. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 101, 555 A.2d 800, 802 (1989). They are not a cause of action in their own right. "To this extent, punitive damages must, by necessity, be related to [an] injury-producing cause of action." *Id.* "This does not mean, however, that specific compensatory damages must be awarded to sustain a punitive damage award." *Id.* "Even though compensatory damages [may not be] awarded, punitive damages could be appropriate, the critical factor being the establishment of sufficient evidence to sustain the cause of action." *Id.* at 102, 555 A.2d at 803. In other words, the trier of fact must first find liability on a legitimate cause of action, though compensatory damages need not be awarded.

the following two grounds: (1) lack of conformity to law or rule of court and (2) the inclusion of scandalous or impertinent matter. *Calvert v. New Freedom Borough,* 21 D.&C.4th 303 (York Cty. 1993). Facts not material to an issue are impertinent. *Berkebile v. Nationwide Insurance Co.,* 6 D.&C.3d 243 (Somerset Cty. 1977). Furthermore, a preliminary objection in the nature of a motion to strike off a pleading should be overruled unless a party can affirmatively show prejudice. The right to strike impertinent matter should be sparingly exercised; where the matter is impertinent but not injurious, it need not be stricken. *Goehring v. Harleyville Mutual Casualty Co.,* 73 D.&C.2d 784 (Beaver Cty. 1976).

While the presence of a plea for punitive damages in the instant complaint may be injurious to the defendants, it is not impertinent because the facts which would merit their award have been sufficiently pled. Moreover, under Pennsylvania law, punitive damages may only be awarded "for conduct that is outrageous, because of the defendant's evil motive or [its] reckless indifference to the rights of others." *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747 (1984). Plaintiffs have sufficiently pled a claim for punitive damages. See *e.g.,* amended complaint at ¶¶42, 43 and 44. Defendants' argument that there are no "facts that can support a finding of anything more than mere negligence" is misplaced at this stage of the proceedings. Defendants' second preliminary objection will accordingly be denied.

Finally, defendants also seek to strike paragraph 19(i) of the amended complaint for failure to conform to rule of court. The court agrees that plaintiffs' averment of "[o]therwise mistreating the body of the decedent" is a

general averment of the type not permitted by the pleading rules in Pennsylvania. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983). Defendants' third preliminary objection will therefore be sustained.

Hence this order:

## ORDER

And now, November 10, 2004, the defendants' motion to strike paragraph 19(i) of the amended complaint is granted. Defendants' preliminary objection in the nature of a demurrer to the amended complaint is denied. Defendants' demurrer and/or motion to strike the claim for punitive damages in Count VII is also denied.